Filed 7/21/15  P. v. Moore CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEFFREY SHERROD MOORE,<br><br>    Defendant and Appellant. | D066170<br><br><br>(Super. Ct. No. SCN326538) |


APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.


Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Jennifer B. Truong, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

In May 2014 a jury found Jeffrey Sherrod Moore guilty of one count of felony burglary (Pen. Code, § 459; count 3),[1] two counts of petty theft of retail merchandise (§§ 484, 490.5; counts 2 & 4), and one count of receiving stolen property (§ 496, subd. (a); count 5). The jury deadlocked on count 1 for felony burglary (§ 459), which the People subsequently dismissed. The court sentenced Moore to three years for the first count of petty theft (count 2) based on aggravating circumstances; a consecutive one-third middle term of eight months for the second count of petty theft (count 4); three years for felony burglary (count 3); and three years for receiving stolen property (count 5). Pursuant to section 654, subdivision (a), the court stayed Moore's sentence for count 3 finding it was the same criminal act as count 4. The court also stayed the sentence for count 5.

Moore presents three issues on appeal.[2] First, Moore contends he was actually charged and sentenced for petty theft under count 5 rather than receiving stolen property. Second, Moore contends counts 2, 4, and 5 constitute a single offense under the doctrine of *People v. Bailey* (1961) 55 Cal.2d 514 (*Bailey*). Accordingly, Moore contends the court should have consolidated the three counts and he should have received a single conviction for theft. Third, Moore argues he received ineffective assistance of counsel at

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Moore also filed a petition for writ of habeas corpus (*In re Jeffrey Sherrod Moore* (D067592)), which we ordered considered with this appeal. We deny the petition by separate order. We deny the motion to consolidate the appeal with the petition.

trial because his trial counsel should have argued for aggregation of his offenses at trial. We disagree with these contentions and affirm the judgment.

## FACTUAL BACKGROUND

Jacob Evans, a store investigations specialist for Toys "R" Us, was assigned to the Oceanside store because the company had reports that an individual they were looking for had been making weekly visits to the store. Multiple other Toys "R" Us stores in the San Diego area reported an African-American male wearing a large jersey who repeatedly entered and exited the stores and, when exiting, appeared to have a box-shaped bulge under his jersey in the area of his waistband. Evans had seen an individual matching the suspect's description in late October 2013. He had photographed the suspect and the vehicle the suspect drove.

On December 8, 2013, Evans observed Moore, the same individual he had seen and photographed in late October, enter the store. Moore was wearing a white jersey with a blue and black stripe and the number 48 on the back. Evans had seen Moore wear a similar jersey on at least two previous occasions at other stores. Evans watched Moore enter the store and make his way to the Lego area. Evans saw Moore remove a Willis Tower Lego set (Willis Tower set) and a Brandenburg Gate Lego set (Brandenburg Gate set) from different shelves on the display unit and carry both sets to the back of the store. Once in the back of the store, Moore placed the Brandenburg Gate set on the corner of a shelf. He then concealed the Willis Tower set under a tight blue shirt he was wearing underneath his jersey. Evans followed Moore and watched Moore make his way past the registers and out of the store. Evans did not exit the store himself.

3

Several minutes later, Moore reentered the store and Evans again followed him. Moore looked at items in several other toy areas before he ended up where he had left the Brandenburg Gate set. Moore took the Brandenburg Gate set to the farthest area of the store where he concealed it in his waistband underneath his blue shirt and jersey. He then exited the store. This time, Evans followed Moore into the store's parking lot where Evans saw Moore open the driver's side door of a green Hyundai and lean in. He removed an object from his waistband and placed it on the floorboard behind the passenger seat.

Moore entered the store a third time, although Evans lost sight of Moore after entering the store himself. Approximately 20 minutes later, Evans saw Moore checking out at one of the store's registers. Evans called the police. While on the phone with the police, Evans followed Moore out of the store and observed him return to the green Hyundai.

Moore was driving out of the store's parking lot when Oceanside Police Officer Scott Garrett, arrived on the scene. Officer Garrett, who had been given a description matching Moore, stopped Moore's vehicle and Moore identified himself. Moore was not wearing the white jersey at this time. Officer Garrett searched the vehicle and found a white jersey bearing the number 48 on the front passenger seat. He discovered a Robie House Lego set (Robie House set) with a security device still attached to it underneath the white jersey. Garrett also found a Willis Tower set on the front passenger floorboard and a Brandenburg Gate set on the vehicle's rear floorboard. Officer Garrett found a Toys "R" Us receipt for a purchase Moore made on that date, but it was not for the Willis

4

Tower set, the Brandenburg Gate set or the Robie House set. Officer Garrett searched Moore and discovered a cell phone, which Moore identified as his own.

Officer Garrett arrested Moore. An inventory search of Moore upon his arrival at the police station revealed he possessed $37 in cash, but he had no wallet, checkbooks, or credit cards. When Officer Garrett later conducted a search of Moore's cell phone, he discovered Moore sent a text message after being taken to the police station. The message read "They got me, Toys-R-Us, don't call."[3]

DISCUSSION

I

*Moore's Conviction for Receiving Stolen Property*

Moore contends his conviction for count 5, receiving stolen property related to the Robie House set, was improper because the court "implicitly found" he stole the Robie House set in the same instance he stole the Willis Tower set and the Brandenburg Gate set. Therefore, because one cannot be convicted of both stealing and receiving stolen property, he could not be convicted on a charge of the former crime. The People contend Moore's conviction was proper because count 5 concerned receipt of different stolen property than that charged as stolen in counts 2 and 4. We agree with the People.

---

[3] Moore does not allege the search of his cell phone was improper under *Riley v. California* (2014) ___ U.S. ___, ___ [134 S.Ct. 2473, 189 L.Ed.2d 430] because he concedes the search was conducted pursuant to a Fourth Amendment waiver. (See *In re Curtis T.* (1989) 214 Cal.App.3d 1391, 1395-1396.)

5

A person may not be convicted of both theft and receipt of the same property. (§ 496, subd. (a); *People v. Ceja* (2010) 49 Cal.4th 1, 4 (*Ceja*).)  However, this principle is inapplicable where, as here, an individual is convicted of theft and receipt of separate pieces of property.  (*Ceja*, *supra*, at pp. 4-5 ["The rule against dual convictions was … founded on the notion that it is 'logically impossible for a thief who has stolen an item of property to buy or receive *that* property from himself.' "].)  (Italics added.)  Therefore, regardless of whether Moore actually stole the Robie House set, he may be charged with and convicted for receiving that stolen property independently of any charges or convictions relating to theft of the Willis Tower set and the Brandenburg Gate set. (§ 496, subd. (a); see Gov. Code, § 26501; *Ceja*, at p. 7 ["[T]he prosecutor has the discretion to decide which offenses to charge.  The courts do not generally supervise these 'purely prosecutorial function[s].' "].)  Accordingly, we affirm Moore's conviction under count 5.

II

*Moore's Conviction for Multiple Counts of Petty Theft*

Moore also argues the court failed to consolidate the multiple counts of petty theft against him into a single count for the same offense.  Moore contends he may only be convicted of one offense under *Bailey*, *supra*, 55 Cal.2d 514, because he stole the Willis Tower set and the Brandenburg Gate set pursuant to a "single intention," and because removing both sets from their respective shelf spaces simultaneously constituted a single act of theft.  The People contend *Bailey* is inapplicable.  We agree with the People.

"A criminal defendant cannot be *punished* more than once for the same criminal act or for a series of criminal acts committed 'incident to one objective.' ([Citation]; see § 654.)  However, as a general matter, a criminal defendant can suffer multiple *convictions* for a single criminal act or series of related criminal acts.  (§ 954 ['The prosecution is not required to elect between … different offenses or counts set forth in the accusatory pleading, [and] the defendant may be convicted of any number of the offenses charged.'].)"  (*People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1517.)

The Supreme Court in *Bailey* created an exception to this general rule.  In *Bailey*, the defendant committed a single misrepresentation resulting in the continued receipt of welfare payments, each individual payment amounting to petty theft but collectively amounting to grand theft.  (*Bailey*, *supra*, 55 Cal.2d at pp. 515-516, 518, fn. 3.)  Aside from this single misrepresentation and omitting to correct it, the defendant committed no other criminal acts.  Because the evidence supported a jury finding the defendant acted pursuant to an initial design to continue receiving the payments until they exceeded the requisite amount for grand theft, the Supreme Court concluded the defendant had not committed "separate and distinct" offenses of petty theft, but rather a single act of grand theft "pursuant to one intention, one general impulse, and one plan."  (*Id.* at p. 519.)  In so holding, the *Bailey* court distinguished the facts before it from earlier cases upholding multiple convictions of grand theft involving separate and distinct acts of theft despite their similarities.  (*Ibid.*)

A number of Court of Appeal decisions subsequently interpreted *Bailey*, *supra*, 55 Cal.2d 514 to shield defendants from multiple convictions for committing multiple acts

7

of grand theft pursuant to a singular criminal intention. (See generally *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 363-364; *People v. Brooks* (1985) 166 Cal.App.3d 24, 30-31; *People v. Packard* (1982) 131 Cal.App.3d 622, 626; *People v. Richardson* (1978) 83 Cal.App.3d 853, 866.) However, the Supreme Court recently rejected this expansion of *Bailey* and recognized defendants may be convicted of multiple counts of theft where they commit separate and distinct acts of the offense, even if "pursuant to a single overarching scheme." (*People v. Whitmer* (2014) 59 Cal.4th 733, 741 (*Whitmer*).) Thus, *Bailey* only applies where a defendant commits a single act of theft.[4]

We review the judgment for substantial evidence. "The *Bailey* doctrine applies as a matter of law only in the absence of any evidence from which the jury could have reasonably inferred that the defendant acted pursuant to more than one intention, one general impulse, or one plan." (*People v. Jaska* (2011) 194 Cal.App.4th 971, 984.)

Turning to the case at hand, we conclude there was substantial evidence to support Moore's conviction of multiple counts of petty theft. Moore removed each set from separate shelf space and placed the items in a secluded area of the store. He placed the

---

[4]    As a general rule, a decision of a court overruling prior decisions is given full retroactive effect unless the appellate court determines retroactive application should be restricted on grounds of equity and public policy. (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888.) The *Whitmer* court did not retroactively apply its holding to the defendant in that case because it would have been "an unforeseeable judicial enlargement of criminal liability for multiple grand thefts." (*Whitmer*, *supra,* 59 Cal.4th at p. 742.) Application of *Whitmer* to this case is not similarly barred on grounds of equity and public policy because, as Moore admits, there are no cases applying the *Bailey* doctrine to aggregate multiple convictions of petty theft into one conviction of petty theft.

Willis Tower set under his jersey and removed it from the store. Upon his return to the store, Moore walked around and stopped to look at other items in the store before he went back to where he placed the Brandenburg Gate set. He then concealed and removed the Brandenburg Gate set. In sentencing Moore to consecutive terms for counts 4 (theft of the Brandenburg Gate set) and 2 (theft of the Willis Tower set), the trial court concluded there were two crimes. "[Moore] left the store, came back[,] and committed a second theft."

*People v. Shannon* (1998) 66 Cal.App.4th 649, 654 (*Shannon*) held a defendant need not remove an item of property from a store to be liable for theft of that property. However, *Shannon* does not compel the conclusion Moore's independent acts of theft in this case should be viewed as a singular act. In *Shannon*, the defendant placed multiple items into a shopping bag and took them collectively to a clerk where he asked to exchange them for a cash refund. (*Id*. at pp. 652-653, 656.) The issue in *Shannon* did not involve the number of thefts committed, but rather at what point in time theft occurred since the defendant never actually left the store with the items. (*Id*. at p. 653.). The evidence in *Shannon* indicated the defendant committed a single act of theft by transporting and offering the bag of items to the cashier for a return. In contrast, Moore concealed and removed each item from the store separately. The fact he simultaneously moved two items within the store does not prevent conviction for the distinct crimes he committed. Therefore, because substantial evidence supports the conviction for two distinct and separate acts of petty theft, we conclude *Bailey*, *supra*, 55 Cal.2d 514 is inapplicable.

9

Accordingly, we affirm Moore's conviction and sentencing under counts 2 and 4. Given our conclusions, Moore cannot establish his trial counsel provided ineffective assistance of counsel or that any deficiency in his counsel's failure to move for acquittal or request an aggregation instruction caused him prejudice. (*People v. Carrasco* (2014) 59 Cal.4th 924, 982.)

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

IRION, J.